1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYLAN SCOTT HALE,<br><br>                                    Petitioner,<br><br>v.<br><br>ANNE E. VILLALPANDO,<br><br>                                  Respondent. | Case No.: 21-cv-1884-JES-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO DISMISS; and**<br><br>**(2) DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 37]** |

Pending before the Court is Petitioner Dylan Scott Hale's Amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF No. 30 ("Amended Petition"). On May 5, 2023, Respondent filed a motion to dismiss the Amended Petition. ECF No. 37. After obtaining an extension from the Court, on August 28, 2023, Petitioner filed a response. ECF No. 45. After due consideration and for the reasons stated below, the Court **GRANTS** the motion to dismiss and **DISMISSES** the petition.

## I.  BACKGROUND

Petitioner Hale is a former member of the United States Air Force. ECF No. 45 at 2. While in service, he was convicted under the Uniform Code of Military Justice

("UCMJ") for various violations and sentenced to 3,040 days of confinement. *Id.* At the time that he filed the instant petition, he was housed at the Naval Consolidated Brig Miramar ("NCBM"). *Id.* The allegations in the Amended Petition arise from incidents during Hale's time at NCBM. Since then, in July 2022, Hale was transferred from NCBM to his current location within the Federal Bureau of Prison system at USP Marion. ECF Nos. 23, 25, 26, 32.

The initial petition in this case was filed on November 4, 2021. ECF No. 1. Respondent moved to dismiss the petition. ECF No. 10. While the motion was pending, Hale filed a motion for temporary restraining order and preliminary injunction. ECF No. 15. The Court denied the motion for temporary restraining order and preliminary injunction, and granted Respondent's motion to dismiss without prejudice, permitting Hale to amend his petition. ECF Nos. 19, 27. On February 26, 2023, Hale filed the Amended Petition, the currently operative petition. ECF No. 30. Respondent then filed the instant motion to dismiss the Amended Petition. ECF No. 37.

The Amended Petition brings allegations related to three separate disciplinary proceedings brought against Hale at NCBM.

### A.    DR 029-21

The first disciplinary proceeding involved an incident between Hale and another NCBM prisoner, Lattin, that occurred on March 18, 2021. Amended Petition ¶ 7. Hale alleges that Lattin used homophobic slurs against him. *Id.*; ECF No. 37-2 at 13-14. In response, Hale exchanged words with Lattin. ECF No. 37-2 at 13-14. A physical altercation took place between the two, and Lattin punched and kicked Hale. Amended Petition ¶ 7; ECF No. 37-2 at 12-14.

As a result, Hale was initially issued DR 029-21 for assault. Amended Petition ¶ 8. This charge was later dismissed, and he was recharged with provoking words and gestures, disorderly conduct, and conduct which threatens. *Id.*; ECF No. 37-2 at 14-15, 22-23. Hale pled guilty to the provoking words and gestures charge, but not guilty to the rest. Amended Petition ¶ 8; ECF No. 37-2 at 25. He was found guilty of all three charges

after his Disciplinary and Adjustment Board ("D&A Board") hearing. *Id.* at 25-28. As a result, he lost good conduct time of 30 days and given disciplinary segregation of 14 days, which was suspended for 180 days. *Id.* at 28. Hale appealed the decision, but the appeal was denied for "insufficient grounds." *Id.* at 28, 30-39.

**B.    DR 033-21**

The second disciplinary proceeding involved an incident between Hale and another NCBM prisoner, Jewell, that occurred on April 1, 2021. Amended Petition ¶ 11. Hale states that he was ascending a stairwell after a workout and was "not paying attention and [] accident[ally] hit shoulders" with Jewell. *Id.*; ECF No. 37-2 at 56. Jewell and Hale exchanged words, and Hale stated that he "made a hand gesture" to him. *Id.* In the investigative notes for the incident, it was noted that video footage was reviewed and showed Hale "deliberately hitting shoulders" with Jewell, Jewell is noted to have been upset and seen yelling at Hale, and Hale made a "puppet"-like hand gesture to Jewell. *Id.*

As a result of this altercation, Hale was charged with assault consummated by battery and conduct that threatens. Amended Petition ¶ 13; ECF No. 37-2 at 57. He pled not guilty to both counts. ECF No. 37-2 at 66. The assault consummated by battery charge was dismissed, but he was found guilty of the conduct that threatens charge and also the additional charge of physical contact, which was listed as a lesser included charge of assault. *Id.* at 69. As a result, he lost good conduct time of 30 days (with 15 of those days suspended for 180 days), extra duty for 14 days, and the 14 days of disciplinary segregation which has been suspended from DR 029-21 was vacated. *Id.* Hale appealed the decision, but the appeal was also denied for "insufficient grounds." *Id.* at 69, 71-77.

**C.    DR 089-21**

The third disciplinary proceeding also involved Hale and Lattin from DR 029-21. As a result of the previous physical altercation, on April 1, 2021, the NCBM issued a "No Contact" order to both Hale and Lattin, ordering both to "refrain from contact," that they must keep a distance of 15 feet from each other, "refrain from all communication . . .

includ[ing] attempting third party communications and non-verbal communication." ECF No. 37-2 at 84, 88.

Hale alleges that after he received no redress from NCBM regarding the previous altercation, he filed civil proceedings against Lattin in the Superior Court of California. Amended Petition ¶ 16. He alleges that he was required by the small claims court to send a pre-litigation demand letter, stating his cause of action and proposed settlement, to Lattin's attorney. *Id.* ¶ 17. On June 1, 2021, he sent a letter to Lattin's counsel stating that he is acting *pro se* in a case for assault and battery against Lattin and demanded a settlement amount. ECF No. 37-2 at 90.

On June 28, 2021, Lattin filed a complaint against Hale for violating the No Contact order based on this letter. ECF No. 37 at 93-95. As a result, Hale was charged with Violation of a No-Contact Order, Extortion, Provoking Words or Gestures, and Unauthorized Use of Mail or Telephone. ECF No. 37-2 at 99-100. He pled not guilty to all charges, and was found guilty of violation of the No Contact order, extortion, and authorized use of mail/phone, while the provoking words and gestures charge was dismissed. *Id.* at 114.

Hale filed a complaint over this proceeding, arguing for example, that the NCBM failed to adhere to the 24-hour notice requirement for the hearing and that certain officers involved were not impartial. ECF No. 37-2 at 119-22. The Commanding Officer set aside the previous hearing results based on the lack of 24 hour notice, and Hale was given a new board meeting. *Id.* at 119.

In the new hearing, he was charged with the same four charges. He pled guilty to the charge of violation of No Contact order. ECF No. 37-2 at 131. He pled not guilty to extortion and provoking words and gestures, and those charges were dismissed against him. *Id.* He also pled not guilty to unauthorized use of mail or telephone, but was found guilty. *Id.* He received 18 days of segregation, which was already served, loss of good conduct time of 15 days, and the 15 days suspended from DR 029-21 was reinstated. *Id.* at 133. Hale again appealed, but the appeal was denied on insufficient grounds. *Id.* at 133,

137-39. 71-77.

## II.     LEGAL STANDARDS

Petitioner brings this petition under 28 U.S.C. § 2241, which authorizes a prisoner to file a writ of habeas corpus when he is "in custody in violation of the Constitution or laws or treaties of the United States." Section § 2241 "vests federal courts with jurisdiction over applications for habeas corpus from persons confined by the military courts." *Burns v. Wilson*, 346 U.S. 137, 139 (1953).

As this Court previously recognized, Rule 4 of the Rules Governing Section 2254 cases states that "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner." Rule 4 has also been applied to Section 2241 habeas petitions. *See Lane v. Feather*, 584 F. App'x 843 (9th Cir. 2014) (finding no error when district court applied Rule 4 to Section 2241 habeas petition); Rules Governing Section 2254 Cases, Rule 1(b) (indicating that district courts may apply Rules Governing Section 2254 Cases to Section 2241 petitions). Rule 4 dismissal is appropriate "when on the face of the petition it is obvious that the petition lacks merit." *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Gutierrez v. Griggs*, 695 F.2d 1195, 1198 (9th Cir. 1983)). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

In disciplinary proceedings, a prisoner does not receive "the fully panoply of rights due a [criminal] defendant." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (noting that courts must balance "institutional needs and objectives" and "provisions of the Constitution). Where a state has "provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior," a prisoner may assert a liberty interest under the Fourteenth Amendment that "entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.* at 557. Thus, where a

prison disciplinary hearing may result in the loss of good time credits, a prisoner must receive:

> (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). In addition, the "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Id.* The court expressly declined to "adopt a more stringent evidentiary standard" and clarified that this "some evidence" standard is met "if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Id.* at 455 (citation omitted). Specifically, "[a]scertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Further, it does not require "evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457.

### III.   DISCUSSION

The Amended Petition raises several grounds as to why the disciplinary hearings did not comport with due process: (1) the charge for "conduct which threatens" is unconstitutionally vague; (2) he was charged with a new charge outside his presence after the disciplinary hearing; (3) he did not have an impartial officer preside over the disciplinary proceedings; (4) he was denied adequate opportunity to confer with counsel in DR 029-21; (5) the written statements from the hearing officers did not meet the requirement under *Wolff* and *Hill*; and (6) he was prejudiced during DR 089-21 by the officer imposing a charge on him "without rational basis." ECF No. 30.

#### A.   Ground One: Conduct which Threatens

Petitioner's first ground is that the "Conduct which Threatens" violation, charged against him in both D 029-21 and DR 033-21, is unconstitutionally vague.

The Ninth Circuit has permitted vagueness challenges to prison regulations. *Castro v. Terhune*, 712 F.3d 1304, 1310-11 (9th Cir. 2013) (assuming without deciding void for vagueness doctrine applies to prison disciplinary regulations). "A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *United States v. Makowski*, 120 F.3d 1078, 1080-81 (9th Cir. 1997); *Kashem v. Barr*, 941 F.3d 358, 371 (9th Cir. 2019) (the regulation must "giv[e] a person of ordinary intelligence fair notice of what is prohibited") (internal quotation marks omitted).

A regulation survives a void for vagueness challenge if it is defined " [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983); *Castro*, 712 F.3d at 1311. Courts have required a plaintiff to show that the regulation meets both prongs of the test above as applied to his own conduct. *Castro*, 712 F.3d at 1311; *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982) ("A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."). The purpose behind this requirement is that "(1) individuals should not be punished for behavior they could not have known was illegal; (2) vague laws allow arbitrary and discriminatory enforcement; and (3) vague laws may have a chilling effect on free speech." *Lane v. Salazar*, 911 F.3d 942, 950 (9th Cir. 2018).

Here, the charge for "Conduct which Threatens" is defined further in the Department of the Navy Corrections Manual as follows: "Any conduct which interferes with the orderly running, safety, good order and discipline, or security of the [Military Correctional Facility]." ECF No. 37-3 at 106. Several other courts have evaluated whether similarly-drafted prison regulations are unconstitutionally vague and reached different conclusions, with the point of distinction being whether the specific conduct underlying the charge puts the prisoner on notice that the conduct was prohibited.

Courts have found such regulations unconstitutionally vague where the prisoners had no notice that their conduct was prohibited. *See, e.g.*, *Adams v. Gunnell*, 729 F.2d 362 (5th Cir.1984) (regulation prohibiting "conduct which disrupts the orderly running of the Institution" was unconstitutionally vague where prisoners' conduct consisted of signing a petition alleging that black inmates were denied opportunities to participate in certain programs because "no inmate could have known [that conduct] was against prison rules"); *Richardson v. Coughlin*, 763 F. Supp. 1228, 1234 (S.D.N.Y. 1991) (surviving summary judgment on whether a regulation stating that "inmates shall not engage in conduct which disturbs the order of the facility" was vague against prisoner conduct of gathering signatures for petition).

In contrast, many courts have found these regulations constitutional where the conduct was clearly prohibited. *See, e.g.*, *Hicks v. Fed. Bureau of Prisons*, No. 16-3907, 2017 WL 3468368, at *2 (6th Cir. June 5, 2017) (regulation prohibiting "[c]onduct which disrupts or interferes with the security or orderly running of the institution" was not unconstitutionally vague where prisoner should have known that threatening a unit manager would interfere with the orderly running of the institution); *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *2 (6th Cir. July 17, 2017) (holding same as to same regulation where prisoner used prison work computer to improperly access government accounts and servers); *Moore v. Pepe*, 45 F.3d 423 (1st Cir. 1995) (regulation prohibiting "conduct which disrupt[ed] or interfere[d] with the security or orderly running of the institution" was not vague where prisoner should have known that his conduct—aiding another inmate to type a note falsely inculpating other inmates—would be disruptive and would come under this disciplinary standard); *Isby-Israel v. Finnan*, 347 F. App'x 253, 254-55 (7th Cir. 2009) (regulation prohibiting "disorderly conduct: exhibiting disruptive and/or violent conduct which disrupts the security of the facility or other area in which the offender is located" was not vague where prisoner threw a food tray); *Culp v. O'Brien*, No. 87-3068-O, 1989 WL 47812, at *3 (D. Kan. Apr. 21, 1989) (regulation prohibiting "conduct which disrupts the security of the segregation unit" was not vague

where prisoner in one instance attempted to obtain illegal contraband and in other instance encouraged other inmates to yell and kick their doors to disrupt a disciplinary proceeding because they were acts of "clear disobedience and illegality that carried their own warning of wrongdoing").

In a case where it was less apparent that the conduct was wrongful, a court nevertheless upheld the statute on vagueness grounds. In *Friedman v. Hemingway*, No. 21-10185, 2022 WL 1410696, at *2-3 (E.D. Mich. May 4, 2022), the prisoner was found in possession of a battery pack and cord for charging a portable phone. He was charged with two counts, one that prohibited "possession of . . . a tool . . . hazardous to institutional security or personal safety; e.g., . . . portable telephone, pager, or other electronic device" and another one that prohibited "[c]onduct which disrupts or interferes with the security or orderly running of the institution." *Id.* The court noted that "[p]rison regulations do not need to be as clear as criminal statutes" and found that both statutes provided fair warning that a battery pack and cord were prohibited. *Id.*

Thus, in order to evaluate the vagueness challenge, the Court considers the conduct at issue and evaluates whether the prisoner should have known that it was prohibited. In DR 029-21, even though the evidence was clear that Lattin was the instigator of the physical assault against Hale, Hale admitted to exchanging words with Lattin, including insults, vulgarities, and name-calling. ECF No. 37-2 at 13. Based on this conduct, Hale was also charged with Provoking Words or Gestures, which is defined to prohibit prisoners from "us[ing] provoking, insulting, threatening, indecent, lewd, racially-charged, sexual orientation or improper language or gestures toward another prisoner." *Id.* at 14. In DR 033-21, the investigative report indicated that the video footage of the incident between Hale and the other prisoner Jewell showed Hale walking in the middle of the stairs and "deliberately hitting shoulders" with Jewell. *Id.* at 57. There were witness statements that said that Hale did not deliberately make contact with Jewell, *id.* at 56, but also a witness statement that Hale "shoulder checked [] Jewell aggressively on the stairwell after [] Jewell had already moved over." *Id.* at 63. Thus, the conduct at issue

here—using provocative words and intentional physical contact with another prisoner—
fall in the category of behavior that a reasonable prisoner should know is prohibited and
in violation of prison regulations.[1] Accordingly, the Court finds that the regulation is not
unconstitutionally vague and finds no error on this ground.

### B.   Ground Two Lesser Included Offense

Petitioner's second ground for relief is that in DR 033-21, he was denied due
process when he was charged with a new charge after the D&A Board hearing.

In this proceeding, he was initially charged with two charges: (1) Assault
Consummated by Battery; and (2) Conduct which Threatens. ECF No. 37-2 at 61, 66. He
was found guilty of Conduct which Threatens and not guilty of the assault charge. *Id.* at
66. The reviewing officer found Hale guilty of another rule violation for Physical
Contact—noting it as a "less included charge – in place of Assault Consummated by
Battery." *Id.* at 69. Hale argues that this violates due process because the additional
charge was imposed against him outside his presence and without an opportunity for him
to be heard on the charge.

The Navy's Corrections Manual related to the approving reviewer provides for the
following:

> (10) Approving Authority Review. All D&A board recommendations will be
> forwarded to the approving authority (see article 3201.1c of this manual) via
> a reviewer. The role of the reviewer is to ensure the board was conducted per
> policy and procedures, that the action taken conforms to MCF regulations,
> and to provide a recommendation to the approving authority. Neither the
> reviewer nor the approving authority is limited by, or bound to, the
> recommendations of the board. <u>The approving authority may reduce or
> reverse the D&A board findings and increase or decrease recommended
> disciplinary actions deemed necessary</u>. Approved D&A board

---

[1] Hale appears to make the additional argument in his response that the Conduct which Threatens charge
should have been dismissed by the D&A Board because he was simultaneously found guilty of other
charges that are narrower and encompass the conduct at issue. ECF No. 45 at 13. However, this practice
of charging a conduct that threatens charge along with a narrower charge is commonplace, as can be
discerned from the various cases cited in this discussion section. Hale provides no legal citation for why
this claim is cognizable on habeas relief.

recommendations are ordered into immediate execution without regard to appeal action. All actions, including previously imposed punishments, will run concurrently. Deferment of any punishments is not authorized. A copy of the disciplinary results will be provided to the prisoner with any security concerns redacted.

ECF No. 37-3 at 103 (emphasis added).

Generally, what is required for the notice requirement under *Wolff* is that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense. At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee." *Wolff*, 418 U.S. at 564. Thus, courts have found that notice to the prisoner that detail a "full statement of the incident, which detailed the date, time, place, and actions at issue" is sufficient, even where the prisoner faces a different lesser included offense at the hearing. *Id.*; *see also Jones v. Virga*, No. 2:12-CV-1138 LKK GGH, 2013 WL 6383248, at *11 (E.D. Cal. Dec. 5, 2013) (no violation as long as notice provided "the date, time, place, and facts at issue"); *Rodriquez v. Williams*, No. 20-3255, 2020 WL 8767931, at *1 (6th Cir. Nov. 12, 2020) (no violation even where offenses required different elements for conviction as long as "both charges are based on same facts"); *Portee v. Vannatta*, 105 F. App'x 855, 856 (7th Cir. 2004) ("advance notice of the facts underlying the original charge provides adequate notice to the inmate that he could be subject to a lesser charge based on those same facts"); *Turner v. Warden*, No. 3:18-CV-34-PPS-MGG, 2019 WL 1332177, at *3 (N.D. Ind. Mar. 21, 2019) ("when an inmate is sufficiently notified of the factual basis for a charge, he is also on notice that he could face another charge based on the same set of facts"); *Walters v. Gonzalez*, No. 2:15-CV-57, 2016 WL 704967, at *2 (S.D. Tex. Feb. 23, 2016) ("The notice must be directed to the conduct at issue—the date, time, and event alleged to be a violation of the rules. What is important is that the prisoner have notice of the facts upon which the claim is based.").

Under this principle, all the cases cited by both Hale and Respondent approve of

the hearing officer finding the prisoner guilty of a lesser included offense even when it had not been charged on the initial notice. *Rivera*, 2013 WL 1010534, at *1 (C.D. Cal. Feb. 8, 2013) (finding no violation where prisoner was found not guilty of being under the influence of a controlled substance but guilty of a lesser offense of refusing a urinalysis test); *Goldmas v. Wegen*, No. 216CV3009JAMDBP, 2017 WL 1213414, at *2 (E.D. Cal. Apr. 3, 2017) (finding no violation where prisoner was charged initially with "Resisting a Peace Officer Resulting in the Use of Force" but found guilty of "Disruptive Behavior"); *Jones*, 2013 WL 6383248, at *11 (finding no violation where prisoner was charged with attempted murder but found guilty of battery causing serious injury); *Rodriquez*, 2020 WL 8767931, at *1 (finding no violation where prisoner was charged with disposing of evidence but found guilty of possession of a hazardous tool); *Porte*, 105 F. App'x at 856 (finding no violation where prisoner was charged with intimidation but found guilty of insolence).

These cases compel the same result here. The original notice to Hale for DR 033-21 provided the factual basis for the conduct at issue—detailed facts related to his physical contact with prisoner Jewell. Furthermore, the prison regulations provided notice to Hale that he might face a lesser included charge without additional notice:

> (a) Guilty. A majority (2 to 1) of the Board members must be convinced the prisoner committed <u>the charged violation, or a lesser-included offense of the charged violation</u>. A guilty determination is based on a "preponderance of evidence", (i.e., there is more evidence to indicate the prisoner is guilty rather than not guilty).

ECF No. 37-3 at 149 (emphasis added); *see Rivera*, No. EDCV 11-1638-JAK JEM, 2013 WL 1010534, at *1 (noting that regulations at issue in that case "places inmates on general notice that upon completion of the fact-finding portion of the disciplinary hearing, the inmate may be found guilty as charged or guilty of an included serious rule violation") (internal quotation marks omitted).

As Hale himself recognizes, the only point of distinction between these cases and his situation is that the lesser included offense finding was not found during his D&A

Board proceeding, but only upon review by the approving reviewer. ECF No. 45 at 14. However, Hale does not cite any cases that suggest that this distinction matters. Ultimately, in either scenario, a prisoner faces Charge A in the notice and is found not guilty of that charge, but then is found guilty of the lesser included Charge B. The prison regulations at issue, as quoted above, approved precisely of this action by the approving reviewer—the ability to "reduce or reverse the D&A Board's findings." *See Jones*, 2013 WL 6383248, at *11 (noting that the regulation at issue provided the hearing officer with "authority to reduce the offense at his discretion during the disciplinary hearing or, after the fact-finding portion of the hearing is completed, and may find the inmate guilty of an included serious rule violation"). By the plain language of this regulation, this power is not limited to the situation where the prisoner had to have been found guilty in the first instance by the D&A Board.

What may be driving Hale's argument that this lesser included charge should have been brought up at his actual hearing itself is a suggestion that he lost an opportunity to be heard on it or defend against it at the hearing. However, Hale has not identified such harm. In other words, he has not identified what he would have done differently to defend himself against this charge had it been specifically brought with advance notice before the hearing. *See Rivera*, 2013 WL 1010534, at *5; *Walters*, 2016 WL 704967, at *2 (noting that prisoner did not show that "additional notice would have made a difference" because he did not "articulate[] any additional arguments or evidence he would have presented at a disciplinary hearing had he been given the additional notice"). Accordingly, the Court finds that the D&A Board's and approving reviewer's actions were proper here and finds no error on this ground.

## C.    Ground Four: Opportunity to Confer with Counsel

Petitioner's fourth ground for relief is that he was denied access to an attorney in DR 029-21. ECF No. 45 at 15. Specifically, he alleges that even though he initially declined to confer with legal counsel, he changed his mind and asked to speak to his counsel, Tami Mitchell. *Id.* However, he claims that he was denied the opportunity to

speak to Ms. Mitchell from March 18 to March 28, the day of his D&A Board Hearing. ECF No. 45 at 15.

Hale does not dispute that he initially waived his right to counsel on March 19, 2021. ECF No. 37-2 at 17. Furthermore, on the Advisement of Hearing Rights Acknowledgement Form, signed by Hale on March 21, 2021, listing rights afforded to the prisoner, it included the right:

> To consult with legal counsel before the D&A board. There is no right to specific legal counsel. The legal counsel is not authorized to be present at the D&A Board, nor will contacting the counsel delay the board proceeding as scheduled. If you request to speak with an attorney regarding this D&A board, you may call MCAS Miramar Defense Services Office . . . . Contact your Unit Manager or Counselor to place a call on the legal phone.

*Id.* at 19. Under this section, Hale selected that he did not request consultation with an attorney. *Id.* Most importantly, there is no right to counsel that is constitutionally mandated in prison disciplinary proceedings. *Wolff*, 418 U.S. at 570 ("[W]e are not prepared to hold that inmates have a right to either retained or appointed counsel in disciplinary proceedings."). Thus, any alleged deficiency in this regard does not amount to a violation of due process rights cognizable on habeas review. The Court finds no error on this ground.

### D. Ground Five: Written Statements

Petitioner's fifth ground for relief is that the written statements in the reports after his disciplinary board hearings did not comport with the requirement under *Wolff* and *Hill* for a "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." Petitioner acknowledges that the statement need not be detailed but argues that the reports at issue here contain no justification for the reasoning or any statement of the evidence that was relied upon. ECF No. 45 at 10-11.

In a case cited by Petitioner, *Mujahid v. Apao*, 795 F. Supp. 1020, 1027 (D. Haw. 1992), the district court recognized that no Supreme Court case nor Ninth Circuit case explained further how detailed the written statements must be. Recognizing that different

circuits have reached different conclusions in this regard, the court relied upon the standard in the Eighth Circuit as enunciated in *Brown v. Frey*, 807 F.3d 1407 (8th Cir. 1986). Specifically, the *Brown* court stated that *Wolff* would be satisfied even if the statement, "sparse in content," would be "sufficient to inform [the inmate] of the evidence relied upon by the fact finders in reaching their decision to take disciplinary action." *Brown*, 807 F.2d at 1412. *Brown* identified two purposes underlying the written statement requirement: (1) to "prevent[] arbitrary action by disciplinary boards;" and (2) to "facilitate review of the disciplinary proceeding by those reviewing bodies having penological concerns—such as officials considering whether to transfer an inmate to another institution and parole boards making parole decisions—as well as those reviewing bodies more interested in the fairness and constitutional propriety of the proceeding—for example, state officials, the public, and the courts." *Id.* at 1410. These purposes and the limited liberty interest recognized for good time credits are balanced against "the administrative costs and burdens a penal institution encounters, and society pays for, when a disciplinary board must provide in every case before it a written statement of the evidence relied on and the reasons for the disciplinary action." *Id.* at 1411.

Applying these legal principles, in *Brown*, the report only indicated that the board "relied on the conduct violation report as well the additional report—the joint memorandum written by Officers Kemp, Brown, and Lewis—in reaching its decision." *Id.* The *Brown* court found this sufficient to inform the prisoner to satisfy due process, without requiring "express[] indicat[ion] what statements in those reports the disciplinary board relied on in reaching its decision." *Id.* at 1413. The court further explained:

> The purpose of a written statement is not to reconstruct in a technical and detailed fashion the incident, as the board concluded it happened, that led to the disciplinary action. Instead, the purpose of the written statement is to require that the disciplinary board make reference to the evidence it relied on and the reasons for the disciplinary action. This forces the disciplinary board to commit itself, contemporaneously with its decision, to certain evidence and reasons, and thus guarantees that the inmate is not placed at a "severe

disadvantage" by being forced to explain the incident or seek redress from unconstitutional acts based on a board's explanation that is patched together after the inmate has forwarded his claim. In this respect, the distinction between a written statement that incorporates statements in a report by reference and one that repeats statements from the report is inconsequential. In both cases, the board has committed itself to certain evidence, and a review based on established facts is available.

*Id.* at 1414 (citations omitted).

Again applying these same principles, in *Mujahid*, the report stated that the committee "relied upon the 'written reports and the testimonies.'" *Mujahid*, 795 F. Supp. at 1027. The underlying written report by the corrections officer recounted factual details and included a conclusion regarding the charges. *Id.* The court concluded that this officer's report provided the prisoner with "sufficient notice of the basis for the Adjustment Committee's decision" and so there was "no uncertainty or ambiguity as to what evidence in the record that the Adjustment Committee relied upon in reaching its decision"—even though the committee's written statement did no more than mention that it relied on the written reports. *Id.* at 1028.

With this background in mind, the Court turns to the written reports at issue here. Hale is correct that each of the written reports themselves contain little written words under the "Findings" heading:

**DR 029-21**

| a. FINDINGS: ☒ PRISONER DID COMMIT THE OFFENSE REPORTED ☐ PRISONER DID NOT COMMIT THE OFFENSE REPORTED FINDINGS ARE BASED ON THE FOLLOWING: |
|---|
| ☒ Investigation Report    ☒ Witness Statements    ☒ Plea    ☒ DR Description |
| PTP HALE PLEAED GUILTY to 1 CHARGE BUT NOT TWO. BASED ON THE PREPONDERANCE OF EVIDENCE, THE DHO BOARD FINDS SNY GUILTY OC ABOVE CHARGES AND RECOMMEND THE BELOW PUNISHMENT. |
| Witness(es): |

ECF No. 37-2 at 28.

//

**DR 033-31**

*Id.* at 68.

### DR 089-21

The initial D&A Board hearing report read as follows:



*Id.* at 125. The report after the new hearing which was granted based on violation of the 24-hour notice rule read:



*Id.* at 133.

The reports are sparse, and do not contain much explanation for the findings. However, they are not required to under *Wolff*, as interpreted by *Mujahid* and *Brown*. *See Brown*, 807 F.2d at 1414 (noting that the written statement does not need to contain detailed factual recounting of the incident and that incorporation of other written statements of the incident sufficed). Indeed, this line of cases that have been relied upon within this Circuit have rejected the other circuits that did require more explanation. *See Brown*, 807 F.2d at 1413 (rejecting cases from the Seventh and Sixth Circuits which expressly held that mere incorporation was not sufficient and required that "each item of evidence must be included in the written statement" and the statement "disclose why the

17

disciplinary board relied on certain evidence and rejected other evidence"); *Mujahid*, 795 F. Supp. at 1027 (similarly rejecting Seventh and Sixth Circuit cases that required "a complete explanation of how the committee concluded that one witness was more credible than another"). In both *Brown* and *Mujahid*, incorporation of other written reports and interviews were found sufficient.

Even though the written statements from these D&A Board hearings do not list all the written reports and witness statements relied upon, these are discernible from the record and thus, the twin purposes of this *Wolff* requirement as enunciated in *Brown* are still satisfied: to commit the disciplinary board into a certain pool of evidence to avoid arbitrary decisions and to permit further review on appeal and by other reviewing bodies, such as this Court. Here, the evidence is evident from the records. For DR 029-02, on the first page of the written statement itself, there is a "detail of charges" section which is filled out, and recounts that an officer witnessed the incident and provides a factual description of what he saw. ECF No. 37-2 at 27. The rest of the record with regards to this proceeding includes a written witness statement (*id.* at 11) and an investigative report, which includes five more witness interview statements and further investigative notes that video footage was viewed and recounts what the video showed (*id.* at 12-14). For DR 033-31, the report's "detail of charges" also recounts the factual details regarding the incident from an officer who witnessed it. *Id.* at 68. Similarly, the record for this proceeding also included an investigative report, which included four witness interview statements and investigative notes that video footage was viewed and recounts what the video showed. *Id.* at 56-59. It also included a further investigative report, containing one additional witness interview. *Id.* at 64. For DR 089-21, the report's "detail of charges" describes how the Investigations Department came to know about the complaint of violation of the no contact order.[2] *Id.* at 124. The record also included a copy of the no

_____

[2] Even though this statement was only on page one of the first D&A Board report, when the first hearing result was set aside, the CO noted that he was "setting aside the results of DR 089-21 and ordering a

contact order (*id.* at 83-86), the letter from Hale to Lattin's attorney (*id.* at 90-91), the complaint made by Lattin (*id.* at 93-95), and an investigative report with three written witness interview statements (*id.* at 99-110).

The Court acknowledges that other courts have held this to be a more exacting requirement, rather than focusing on whether the purposes underlying the requirement were met. Courts have consistently held that the findings cannot be left blank and there must be *some* indication of evidence or explanation. *See, e.g.*, *Briggs v. Gallatin Cnty.*, No. CV 18-10-BU-KLD, 2020 WL 2557740, at *6 (D. Mont. May 20, 2020) (finding insufficient where "Evidence Present, Witnesses, and Lay-Advisor" sections were left empty and the written statement did not explicitly refer to or incorporate the infraction reports). Some courts, however, have held that reference to only whole reports, without more, is not sufficient. *See, e.g.*, *Davidson v. Capuano*, No. 78 CIV. 5724 (RLC), 1988 WL 68189, at *13-14 (S.D.N.Y. June 16, 1988), *aff'd*, 895 F.2d 1410 (2d Cir. 1989) (rejecting statement that said that the decision "was based upon two reports filed by correctional personnel); *Parks v. Dooley*, No. CIV. 09-3514 PAM JSM, 2011 WL 847011, at *29 (D. Minn. Feb. 11, 2011) (insufficient where written statement left out any explanation but only provided a list of witnesses and listed the evidence received including incident reports and prior disciplinary history). Other courts have tried to reconcile cases based on how complex the charges were. In *Saenz v. Young*, 811 F.2d 1172, 1174 (7th Cir. 1987), the court wrote "[w]here the charge is complex and the committee fails to explain its findings, the reviewing court will find it difficult and maybe impossible to determine whether the committee on the one hand found facts showing that the prisoner really was guilty of the charge, or on the other hand based the finding of guilt on erroneous legal premises." But in that case, where the issue was whether the plaintiff threw coffee or not and therefore, committed battery, the court found "there is no mystery

---

new board using the same DR [disciplinary report] with a new page 2 of DD-2714, and new 24 hour notification." *Id.* at 119.

about its reasoning process, [so] despite the extreme brevity of its statement of reasons, that statement is not so deficient as to create error of constitutional magnitude." *Id.*; *see also Davidson*, 1988 WL 681189, at *14 (differentiating *Saenz* because the charge and evidence were not "so simple that the mere incorporation of the misconduct report satisfied due process").

The charges against Hale in these disciplinary proceedings are similarly not so complex, nor is the evidence that was presented through witness summaries, reports, and other documentation. The Court agrees with the sentiment expressed in *Saenz* that the D&A Board's written statements was not a model or perhaps even prudent:

> The prudent committee will give a statement of reasons in every case, rather than invite a lawsuit that it may lose if the court disagrees with where the committee drew the line. All that the committee would have had to say here was that it believed the conduct report, or specific parts of it, and disbelieved the prisoner; and we trust that in future cases prison disciplinary committees will do that and head off the type of dispute that has arisen in this case. But we do not think the omission of the statement violated the Constitution. A statement of reasons has no particular value in itself. It is instrumental to the goal of making sure that prisoners are not subjected through sloppy procedures to an undue risk of being disciplined for things they have not actually done. As that risk did not materialize here, we find no denial of due process—but we warn the prison authorities that they act at their peril in failing to state the reasons for administering discipline.

*Id.* at 1174.

Accordingly, the Court finds that the written reports, even though sparse in content, sufficiently identify the evidence so as meet to the purposes for this requirement under *Wolff* and finds no constitutional due process error on this ground.

### E.   Grounds Three and Six

Petitioner's Amended Petition includes two additional grounds that he did not explicitly address in his response brief. Ground Three alleged that he was denied due process by not having an impartial hearing officer preside over the hearings. ECF No. 30 at 8-9. Ground Six alleges various complaints regarding the proceedings during DR 089-21. *Id.* at 11-12.

As to Ground Three, Petitioner makes general allegations without any specific factual support. He alleges that the hearing officer was not impartial but does not explain why. He alleges that the Commanding Officer was the "proverbial judge, jury and executioner" without explaining why this makes the proceedings unfair or why it violates due process. He also alleges that the same hearing officers presiding over his hearings, seeming to suggest that prevented them from being able to disregard previous disciplinary hearings. These assertions are conclusory and are not sufficient to establish impartiality. *See Bostic v. Carlson*, 884 F.2d 1267, 1271 (9th Cir. 1989), overruled on other grounds by *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016) (rejecting argument on habeas petition that decision maker was impartial where prison "provided no facts to support his allegation that the decisionmaker was not impartial").

As to Ground Six, it is again difficult to discern the precise violations that Petitioner identifies. He seems to argue that the imposition of the charged in DR 089-21 has "no rational basis." However, also alleges that it was violative of due process to have the Commanding Officer override the findings of the D&A Board. As discussed above though under Ground Two, the Navy's Corrections Manual mandate this type of review. To the extent that Petitioner is arguing that the guilty findings were not supported by "some evidence" as required under *Hill*, the Court agrees with Respondent that this is belied by the record—Hale himself pled guilty to the violation of no contact order charge and admitted to sending the letter to Lattin's attorney. *Hill*, 472 U.S. at 457 ("some evidence" does not require "evidence that logically precludes any conclusion but the one reached by the disciplinary board").

Accordingly, the Court finds no errors on either of these two grounds.

### E.    No Contact Rule Violation

In his opposition brief, Petitioner brings up one additional argument that in DR 089-21, he was charged with a violation of the No Contact order, but he argues that it was "not per se a posted rule." ECF No. 45 at 15-16.

As an initial matter, the Court notes that Respondent did not brief this issue

1  because it does not appear to be a ground raised in Petitioner's amended petition. *See*
2  *generally* ECF No. 30. Generally, failure to raise a ground in an amended petition is
3  deemed waived. *See, e.g.*, *Aderhold v. United States*, No. CV 07-520-TUC-JMR, 2007
4  WL 9736178, at *2 (D. Ariz. Oct. 31, 2007). The only ground that specifically referenced
5  DR 089-21 was Ground Six, but as discussed above, Petitioner did not make this specific
6  argument for the No Contact order violation charge.

7  Further, even on the merits, Petitioner's argument faces significant challenges.
8  First, as he even himself recognizes, the No Contact order itself explicitly noted "Should
9  you fail to comply, disciplinary action may be taken." ECF No. 45 at 16; ECF No. 37-2 at
10  83. Hale signed the No Contact Order, which also included the statement "I understand
11  the terms of this NO CONTACT ORDER." ECF No. 37-2 at 83. Hale has provided no
12  authority to suggest that taking disciplinary action pursuant to this order, without an
13  explicit rule in the Department of the Navy's Corrections Manual, is a constitutional
14  violation. The evidence shows the opposite—that Hale was on notice of disciplinary
15  action for failing to abide by the order.[3] Second, this challenge to the charge was not
16  raised in Hale's appeal of the disciplinary charge. *See generally* ECF No. 37-2 at 137-
17  139. Federal prisoners are required to exhaust their federal administrative remedies prior
18  to bringing a petition for a writ of habeas corpus in federal court. *Martinez v. Roberts*,
19  804 F.2d 570, 571 (9th Cir. 1986). Third, in the second D&A Board hearing that was
20  ordered, Hale actually pled guilty to the Violation of No Contact order charge. ECF No.
21  37-2 at 131. Generally, a guilty plea waives all claims of a constitutional nature that
22  occurred before the pleas. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Hale
23  makes no argument that his guilty plea was invalid. *Cf. Bostic*, 884 F.2d at 1272 ("The
24  Ninth Circuit has refused, however, to extend . . . procedural protections [that a guilty

[3] Hale makes the additional argument that he was not provided a copy of the No Contact Order. ECF No. 45 at 16. Again, he fails to show how this rises to a constitutional violation cognizable on habeas relief, where he acknowledges he read and signed the order, stating that he understood its terms.

plea must be truly knowing, intelligent and voluntary] to proceedings less formal than state and federal criminal trials."). Thus, the Court finds no error based on this argument.

## IV.   CONCLUSION

For the reasons discussed above, Respondent's motion to dismiss Petitioner's Amended Petition for Writ of Habeas Corpus is **GRANTED** and Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS SO ORDERED.**

Dated:  October 6, 2023

Honorable James E. Simmons Jr.
United States District Judge

21-cv-1884-JES-JLB